IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNA R. AMACHER, | ) | |
| Plaintiff, | ) | NO. 3:21-cv-00638 |
| v. | ) | JUDGE RICHARDSON |
| STATE OF TENNESSEE, et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. No. 12, "Motion"). Defendants have filed a response. (Doc. No. 13). Plaintiff has chosen not to reply, so the Motion is ripe for review.

For the reasons discussed below the Court DENIES the Motion.

### BACKGROUND[1]

Plaintiff, Jenna Amacher, is an elected Alderman for the City of Tullahoma in Coffee County, Tennessee. (Doc. No. 1 at 1). Plaintiff was first sworn into the position of Alderman on August 24, 2020.[2] (*Id.* at 2). Plaintiff is "an active member of the local Republican Party," and

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of the Motion, because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice.

[2] Plaintiff's Complaint states she was sworn into office on August 24, 2021, but the Court believes this is a mistake as Plaintiff's Affidavit later states she was elected City Alderman in August 2020 (Doc. No. 1-1 at 2), and the Motion states that Plaintiff has been serving as Alderman since August

plans to seek reelection in 2022. (*Id.*). Plaintiff wishes to "affiliate with her political organization on the voter ballot," which is she why she is requesting the present injunction. (*Id.*) Currently, Tennessee has a law that requires that "municipal elections" be nonpartisan.[3] *See* Tenn. Code. Ann. § 2-13-208 ("the Act"). The Act reads in full,

> (a) Notwithstanding other provisions of this part, municipal elections shall be nonpartisan. Municipal elections shall not require candidates to be nominated by political parties unless the municipality's charter specifically permits partisan elections. When a municipality's charter allows partisan elections, political parties may nominate candidates for municipal office by using the primary election provisions of this title or as otherwise authorized by the rules of the party.
>
> (b) In any county having a metropolitan form of government, the election of the county mayor and the members of the legislative body of such metropolitan government shall be considered to be municipal elections within the meaning of this section; however, this section shall not be construed to require a partisan election for any other officers of the metropolitan government if the charter of such metropolitan government provides that elections for such officers shall be nonpartisan.

Tenn. Code. Ann. § 2-13-208.

A "metropolitan government" as referenced in § 2-13-208(b) above, is defined as "the political entity created by consolidation of all, or substantially all, of the political and corporate functions of a county and a city or cities." Tenn. Code. Ann. § 7-1-101. There are currently only three metropolitan governments in Tennessee: Lynchburg/Moore County, Hartsville/Trousdale

---

2020. (Doc. No. 12-1 at 2). The correct date of Plaintiff's swearing in is likely August 24, 2020, which therefore is the date the Court uses above.

[3] The Court was unable to find a description or definition of "nonpartisan" elections in the Tennessee Election Code. However, based on the allegations in Plaintiff's Complaint, it appears that "nonpartisan" in the context of a (general) municipal election for a Tullahoma Alderman means that political parties are not permitted to hold primaries to nominate a preferred candidate for the general election and that candidates are not permitted to have a party designation appear along with their name on the final ballots. For purposes of the Motion, therefore, the Court will accept as true Plaintiff's implication of what all it means for the upcoming election here at issue to be "nonpartisan."

County, and Nashville/Davidson County. *See* Don Darden, *Metropolitan Government*, Mun. Tech. Advisory Serv. Inst. for Pub. Serv. (last updated July 21, 2021), https://www.mtas.tennessee.edu/knowledgebase/metropolitan-government. Coffee County and Tullahoma do not have a metropolitan government and are thus subject only to subsection (a), and not subsection (b), of Tenn. Code Ann. § 2-13-208. In Coffee County, the following elected positions have partisan elections and contested primaries: Sheriff; Trustee; Circuit Court Clerk; County Clerk; Register of Deeds; Assessor of Property; Road Superintendent; County Mayor; Circuit Court Judge; General Sessions Court Judge; District Attorney General; Public Defender; Constable; and Coffee County Commissioner. (Doc. No. 1-1 at 2-3). However, nonpartisan elections are required for City Mayor and for City Alderman, the office for which Plaintiff plans to run for re-election. (*Id.* at 3).

Plaintiff filed the present action on August 17, 2021, seeking a permanent injunction restraining Defendants—the State of Tennessee, Tennessee Secretary of State Tre Hargett, and the Tennessee Election Commission—from enforcing the Act, a judgment declaring the Act to be unconstitutional under the First Amendment, and a judgment awarding Plaintiff attorney's fees. On September 9, 2021, Plaintiff filed this Motion, whereby she seeks to preliminarily enjoin Defendants from enforcing Tenn. Code Ann. § 2-13-208. (Doc. No. 12 at 1).[4]

## LEGAL STANDARD

The Sixth Circuit has held that the district court must balance four factors when considering a motion for preliminary injunction under Federal Rule of Civil Procedure 65: (1) whether the

---

[4] In the caption of her Complaint, Plaintiff identifies herself as "Petitioner" and her counterparties as "Respondents." This is incorrect, as this action involves a complaint and not a petition. Accordingly, in its accompanying order, the Court will direct the Clerk's office to change the status of the parties to "Plaintiff" and "Defendants," respectively. The Court herein will refer to the parties in this manner, and the parties are instructed to do likewise throughout this litigation.

movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to the opposing party or others; and (4) whether the public interest would be served by the issuance of the injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). The second of these factors, irreparable injury absent the injunction, must be present in order for the Court to issue the requested preliminary injunction. *See, e.g.*, *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("Whatever the merits of the alternate, or 'balance of hardships' test may be, the purpose of the test is surely not to eliminate the irreparable harm requirement."). Otherwise, though, these four items are not prerequisites that must be satisfied in order for a preliminary injunction to be issued, but rather factors to be balanced against one another based on their respective strength relative to one another. *See D.T. v. Sumner Cty. Schools*, 942 F.3d 324, 326–27 (6th Cir. 2019) (citations omitted).

Regarding the second factor, irreparable harm, as just indicated "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement. That factor is indispensable." *Id.* (citation and internal quotation marks omitted); *see also Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("The demonstration of some irreparable injury is a sine qua non for issuance of an injunction."). In other words, "although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Sumner Cty. Sch.*, 942 F.3d at 327. Thus, a district court abuses its discretion if it grants a preliminary injunction without making specific findings of irreparable injury. *Id.* And to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical. *Id*.

While the absence of irreparable injury is always fatal to a motion for a preliminary injunction, "[a] finding that there is simply no likelihood of success on the merits is *usually* fatal." *Gonzalez v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (emphasis added). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2003). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (quoting *Michigan Catholic Conf. & Catholic Family Servs. v. Burwell*, 755 F.3d 372, 382 (6th Cir. 2014)).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made mere allegations regarding the treatment of Covid-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-CV-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, No. 1:06-CV-811, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice." (citations omitted)).

In conducting the preliminary injunction analysis, the Court is not limited to the four corners of the complaint but rather may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted).

Notably, the decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

## DISCUSSION

### A. <u>Substantial likelihood of success on the merits</u>

Plaintiff's Complaint appears to bring three claims, all under 42 U.S.C. §1983 ("Section 1983"), against Defendants: (1) a violation of her right to freedom of speech under the First Amendment, (2) a violation of her right to freedom of association under the First Amendment, and (3) a violation of the Fourteenth Amendment's equal protection clause.[5] (Doc. No. 1 at 6). As suggested above, the first factor in assessing a request for preliminary injunction is to assess the merits of Plaintiff's claims. That is, the first factor calls for the Court to determine whether Plaintiff

---

[5] Plaintiff clearly implies that her freedom of speech and equal protection claims appear to be brought under Section 1983. (Doc. No. 1 at 3 ¶ 10 and 4 ¶ 14). The Complaint does not state or make clear under what statute Plaintiff brings her freedom of association claim, but in fact it could be no other than Section 1983 .*See Roath v. Lee*, No. 3:17-CV-00995, 2019 WL 3066533, at *6-7 (M.D. Tenn. July 12, 2019) (explaining that Section 1983 provides the exclusive remedy for constitutional violations by state officials).

has a substantial likelihood of success on the merits of her claims that the Act violates her specified constitutional rights. Plaintiff argues that her claims involve the "internal workings of a political party [that fit] squarely within the protection of the [F]irst [A]mendment"; that any laws infringing upon such a right is subject to strict scrutiny; and that the Act has no compelling state interest that could pass muster under strict scrutiny review. (Doc. No. 12-1 at 4-5).[6] Defendants respond that Plaintiff cannot establish likelihood of success on the merits for the following reasons: (1) two defendants, the State of Tennessee and the Tennessee Election Commission, are immune from suit under the Eleventh Amendment; (2) Plaintiff lacks standing because (according to Defendants) (a) she is alleging no particularized injury to herself, but instead alleges general injuries to the Coffee County Republican Party, and (b) Plaintiff does not have associational standing to litigate on behalf of Coffee County Republican Party; and (3) the Act is constitutional under what is (according to Defendants) the correct standard, *i.e.*, the so-called *Anderson-Burdick* framework. (Doc. No. 13 at 4-11).

### 1. The potential sovereign immunity of two defendants does not negate Plaintiff's chance of success on the merits.

Defendants' argument related to sovereign immunity, even if valid, would not establish a lack of likelihood of success on the merits. Even if it were true that the State of Tennessee and the Tennessee Election Commission are immune from suit (certainly a colorable proposition, but one the Court declines to address at this time), Defendant Tre Hargett, the Tennessee Secretary of

---

[6] The Court notes that in citing documents like this one, it is citing to the page numbering added by the Clerk's Office, and not to the original pagination provided by the author/filer of the document if such pagination is different. The Court also notes that, regrettably, the very first page of the text of the document cited here—*i.e.*, the "Memorandum of Law in Support of Petitioner's [sic] Motion for Preliminary Injunction—indicates incorrectly that the document is bring filed in support of Plaintiff's "motion for summary judgment," a motion that does not presently exist. (Doc. No. 12-1 at 2).

State, is not immune from a suit requesting a permanent injunction, and Defendnts do not assert otherwise. *See Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("The exception set forth in *Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations."). Therefore, Plaintiff's action could still be successful against Tre Hargett in his official capacity, even if it would be unsuccessful against the other two Defendants due to the sovereign immunity they (allegedly) possess.

**2. Plaintiff does not clearly establish her standing to bring the present action.**

Defendants' second argument, challenging Plaintiff's standing, is more fruitful. "In evaluating plaintiffs' likelihood of success on the merits, [the court] examine[s] first the issue of standing." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006).

It is not at all clear to the Court that Plaintiff has standing to bring the present action. "To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559-61 (1992)). The injury must be particularized, meaning, it "must affect the plaintiff in a personal and individual way." *Id.* at 506 (quoting *Lujan*, 504 U.S. at 560 n.1). The injuries Plaintiff allege do not appear to be injuries particular to her. In Plaintiff's Complaint, she states the Act "directly hampers the ability of a party to spread its message and hamstrings voters seeking to inform themselves about the candidates and the campaign issues." (Doc. No. 1 at 4). Plaintiff goes on in the Complaint to state, "[b]arring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association," and "[d]epriving a political party of the

power to endorse suffocates [their First Amendment rights]." (*Id.* at 5-6). Additionally, in her Motion for Preliminary Injunction, Plaintiff notes that her specific concerns with the Act are that it "does not allow candidates in city elections to identify on the ballot as a Republican or the party to conduct a primary election and vet candidates." (Doc. No. 12 at 1).

The first injury Plaintiff identifies (being unable to have her party affiliation listed on a ballot) would likely not be an infringement upon *her* speech. Plaintiff is not writing or publishing the ballot, so the ballot is not Plaintiff's speech. The second injury Plaintiff mentions (her political party being unable to conduct primary elections) is also not an injury to Plaintiff. Instead, it is an injury to the Coffee County Republican Party, and Plaintiff has not alleged that she has third-party standing to bring claims on behalf of any political party.[7] The concept of third-party standing "permits a plaintiff to assert the constitutional or statutory rights of parties not before the court if the plaintiff has a close relationship to those parties and if they are hindered in protecting their own rights. *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 547 (6th Cir. 2021). But to do this, Plaintiff must have suffered her *own* injury. *Id.* And as just discussed, it is unlikely that Plaintiff has a cognizable injury. What's more, there is no reason to believe that her political party is hindered in protecting its own rights. So third-party standing is simply inapplicable in this case.

---

[7] The concept of "associational standing" exists separately from the concept of third-party standing. *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 539, 547 (6th Cir. 2021) (drawing distinctions between the two concepts). But Plaintiff cannot possibly have so-called "associational standing" to being claims on behalf of her political party; the concept of "associational standing" is one that confers standing on the association to sue for injuries as to which its individual members have standing. *See, e.g.*, *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union*, 467 F.3d at 1010. It does not work in reverse, *i.e.*, by conferring standing on individual members to sue for injuries to the association. That is because the association does not itself have any injuries. *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 540 (6th Cir. 2021) ("The association, by definition, has not suffered the injury. Its members have.").

Therefore, because it is not likely that Plaintiff has standing, it is unlikely the Court has subject-matter jurisdiction over this action.[8] For this reason alone, it is unlikely that Plaintiff would be successful on the merits, a reality that renders the issuance of a preliminary injunction almost certainly inappropriate.

**3. Applying the *Anderson-Burdick* framework, the Act is likely to be constitutional.**

As Defendants' third argument suggests, "[e]ven if [P]laintiff[ ] ha[s] standing, there is still reason to question whether [she is] likely to prevail" on the merits of her claims. *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union*, 467 F.3d at 1011.

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr.*

---

[8] Having decided there is a likelihood that the Court does not have subject-matter jurisdiction over this action, observers may be wondering whether the Court should even be deciding a motion for preliminary injunction prior to fully resolving the question of whether it has subject-matter jurisdiction. The short answer is that the Court may do so, provided that the Court's decision is to deny rather than grant preliminary injunctive relief. The Court realizes that it cannot grant a preliminary injunction prior to resolving a colorable challenge to subject-matter jurisdiction. *See, e.g., Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 384 (E.D.N.Y. 2016) (collecting authorities). Obviously, a court should not exercise judicial authority to compel a defendant, via an injunction, to do or not to do something if the court lacks authority to exercise affirmative judicial power. And a lack of subject-matter jurisdiction is a lack of precisely this kind of affirmative authority. But a refusal to exercise affirmative judicial power is another matter entirely; if the court's decision is to deny a request for a preliminary injunction, the concerns about unauthorized use of judicial power are not present in the same way. For this reason, it appears that the Sixth Circuit permits a district court to first deny a motion for a preliminary injunction and then resolve a challenge to subject-matter jurisdiction. *See Freeman v. Helldoerfer*, 208 F.3d 213 (6th Cir. 2000) (affirming district court's denial, in a case removed from state court, of a motion for preliminary injunction prior to the court's remand to state court based on the district court's lack of subject-matter jurisdiction).

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983. Thus, if a plaintiff is unlikely to prove that he was deprived of a constitutional right as alleged, she is unlikely to succeed on the merits of her claim even if the alleged deprivation was caused by a person acting under color of state law. Such is the case here.

In conducting a constitutional analysis of a statute, the Court must determine the "degree of scrutiny" to apply to the statute. *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012). Plaintiff's Complaint argues that the Act would not be found constitutional under a strict scrutiny approach. (Doc. No. 1 at 3). Plaintiff did not identify a source of the standard that (according to her) should apply, it appears that if she has a source, it would be the so-called *Meyer-Buckley* line of cases; these cases prescribed that under certain circumstances (identified below), the standard is "exacting scrutiny," which in the undersigned's view is the equivalent of strict scrutiny.[9] Defendants contend, on the other hand, that *Anderson-Burdick* is the operative framework since the Act is regulating "ballot-access." (Doc. No. 13 at 8 (citing *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. Aug. 24, 2020))).

The *Meyer-Buckley* standard is "concerned specifically with restrictions on 'core' political speech or expression."[10] *Lichtensten v. Hargett*, 489 F. Supp. 3d 742, 760 (M.D. Tenn. 2020)

---

[9] *See Lichtensten v. Hargett*, 489 F. Supp. 3d 742, 757-65 (M.D. Tenn. 2020) for the undersigned's previous discussion of why the *Meyer-Buckley* standard applies strict scrutiny to alleged statutory constitutional violations.

[10] For examples of "core political speech," see e.g., *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 393 (2010) (Scalia, J., concurring) (explaining that documentary films criticizing presidential candidates are core political speech); *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 377 (6th Cir. 2008) (finding that gathering signatures on petitions is core political speech); *Michigan Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 685 (W.D. Mich. 2010) (explaining that soliciting and pooling independent expenditures in support of a candidate is core political speech).

(quoting *Meyer v. Grant*, 486 U.S. 414, 420 (1988)). Here, the Act merely prohibits partisan "municipal elections." It does not prohibit—even in connection with (nonpartisan) municipal elections—political parties from endorsing candidates, nor does it prohibit candidates from affiliating themselves with a certain political party or platform. Nor, for that matter, does it prohibit either the party or the candidate from pronouncing any message at all; the only message it appears to prohibit is a message *on a ballot* (as distinguished from a message coming from a political party or candidate) effectively stating that particular candidates are members of particular parties. Controlling the "mechanics of the electoral process" is not controlling core political speech. *See McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 345 (1995). Courts have determined that controlling the mechanics of an electoral process includes regulations involving the following provisions: restricting ballot access by previously party-affiliated independent candidates; filing deadlines and nominating petitions; and, in a similar case to the present, a prohibition on including party affiliations on ballots for judicial candidates. *See respectively Storer v. Brown*, 415 U.S. 724 (1974); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); and *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016).

As the Act challenged by Plaintiff regulates the state electoral process, rather than core political speech, the correct standard of review to apply is the *Anderson-Burdick* framework "for evaluating constitutional challenges to a state's election laws." *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 545 (6th Cir. 2014). Indeed, the Sixth Circuit seems to accept the general applicability of *Anderson-Burdick* to laws that place some burden on First Amendment rights (but not on "core political speech"). *See Thompson v. Dewine* ["*Thompson I*"], 959 F.3d 804, 808, n.2

(6th Cir. 2020).[11] Moreover, the Sixth Circuit has held that *Anderson-Burdick* is an appropriate framework for evaluating First Amendment claims and Equal Protection claims if they relate to laws "that regulate the actual administration of elections." *Daunt v. Benson*, 956 F.3d 396, 406-07 (6th Cir. 2020). This includes claims not only of aggrieved voters, but also of aggrieved political parties and candidates. *Green Party of Tennessee*, 767 F.3d at 551. It clearly is the appropriate standard here.

> This Court has previously explained that:
>
> There are three steps to a court's analysis under *Anderson-Burdick*. First . . . the court must determine the burden at issue. "The next step under *Anderson-Burdick* is to 'consider the State's justifications for the restrictions.' " *Kishore v. Whitmer*, 972 F.3d 745, 750, (6th Cir. Aug. 24, 2020) (quoting *Schmitt v. LaRose*, 933 F.3d 628, 641 (6th Cir. 2019)). " 'At the third step of *Anderson-Burdick* we assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests.' " *Id.* at 751, (quoting *Schmitt*, 933 F.3d at 641).

*Lichtenstein*, 489 F. Supp. at 764. The level of scrutiny under *Anderson-Burdick* depends upon the "sever[ity]" or degree of the "burden" of the restrictions on an individual's First and Fourteenth Amendment rights. *See Daunt*, 956 F.3d at 407 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). If an individual's rights are " 'subjected to severe restrictions,' the regulation is subject to strict scrutiny and 'must be narrowly drawn to advance a state interest of compelling importance.' " *Hawkins v. Dewine*, 968 F.3d 603, 606 (6th Cir. 2020) (quoting *Burdick*, 504 U.S. at 434)). But if the individual's "rights are subjected only to reasonable, nondiscriminatory restrictions," which are considered to impose only a light (or slight) burden, rational-basis review will apply. *Burdick*, 504 U.S. at 434. And there is also an intermediate category of restrictions that

---

[11] *Thompson I* was concerned specifically with the burden imposed by ballot-initiative requirements, but in places it strongly implies (albeit with some seeming disapproval) that under current Sixth Circuit law the *Anderson-Burdick* framework applies generally to restrictions on First Amendment rights imposed by election laws. *Thompson*, I 959 F.3d at 808 & n.2.

are "moderate," *i.e.*, somewhere "between slight and severe." *See Mays v. LaRose*, 951 F.3d 775, 784-85 (6th Cir. 2020).

The Court begins by assessing the burden imposed upon Plaintiff's rights. As noted above, the burden is considered light if the plaintiff's "rights are subjected only to 'reasonable, nondiscriminatory restrictions.' " *Burdick*, 504 U.S. at 434. In that case, "the regulation is subject to rational-basis review because 'the State's important regulatory interests are generally sufficient to justify' the restriction." *Hawkins*, 968 F.3d at 605-06 (quoting *Anderson*, 460 U.S. at 788)). Here, the Court assesses the burden on Plaintiff's First Amendment rights (to freedom of speech and association) as light (which is to say slight). Plaintiff is not prohibited by the Act from affiliating or otherwise associating with a political party or from informing the public of such affiliation; nor is she prohibited from invoking (and endorsing) her party's platform or positions while she is campaigning. Moreover, although Court is not assessing the burden on the Coffee County Republican Party, because it is not before the Court, it is worth noting that the Act does not prohibit the party from endorsing Plaintiff or campaigning on her behalf. The only things the Act prevents Plaintiff from doing is having "Republican Party" appear next to her name on the ballot and being nominated via a primary process; otherwise, the Act does not affect her rights to free speech or association at all.

Additionally, the Act appears to be non-discriminatory. It applies across the board to all municipal elections in Tennessee, subject only to the choice of the municipality itself to adjust its charter to allow for partisan elections. Plaintiff does not provide much basis for her Fourteenth Amendment equal protection claim, stating only that, ". . . delegating the right of political association to the individual municipalities is also unconstitutional . . . [and] violates the Plaintiff's equal protection of the laws." (Doc. No. 1 at 4). However, this sparse, conclusory assertion alone

is not nearly enough for the Court to conclude that the Act imposes *any* burden on Plaintiff's right to equal protection, let alone any burden greater than the light burden imposed on Plaintiff's First Amendment freedoms. For these reasons, the Act cannot be deemed to impose more than a light burden on Plaintiff's constitutional rights and thus is subject only to rational-basis review.

Next, the Court will consider the State's justifications for the regulations, and whether they are constitutionally valid. "The rational-basis test . . . is satisfied by state regulatory interests that are merely legitimate (even if not "important"), but it requires a rational relationship between that interest and the restriction imposed." *Lichtenstein*, 489 F. Supp. 3d at 780 (citing *Bowman v. United States*, 564 F.3d 765, 776 (6th Cir. 2008)). Defendants contend that Tennessee's interests in the Act are the following: preserving the integrity of the state election process, reducing political and campaign related disorder by reducing partisanship, and preserving the resources of municipalities by eliminating the need for them to fund primary elections. (Doc. No. 13 at 10, 12). Defendants note that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); and that "reduc[ing] election-and campaign- related disorder" is also "an important [state] interest." *Thompson v. Dewine*, 976 F.3d 610, 618 (6th Cir. 2020) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). Additionally, other courts have deemed "[t]he reduction of partisanship at the local level" as a "legitimate and strong interest" capable of passing the *Anderson-Burdick* balancing test. *See Marcellus v. Virginia State Bd. of Elec.*, 168 F. Supp. 3d 865, 880 (E.D. Va. 2016) *aff'd by* 849 F.3d 169, 180 (4th Cir. 2017) (referring to Virginia's interest in reducing partisanship in local elections as an "important state interest[]"). And the Sixth Circuit has indicated, entirely unsurprisingly, that the government's interest in preserving public funds is an important governmental interest. *Reynolds v. Comm'r*, 861 F.2d 469, 474 (6th Cir. 1988) ("The

public interest in preserving the public fisc may dramatically outweigh the hardship to an individual litigant[.]"). *See also Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2362 (2020) (Breyer, J., concurring in part and dissenting in part) (noting that "protection of the public fisc" is "an important governmental interest").

However, Defendants provide no empirical evidence, and not much explanation, to support the existence of a "rational relationship" between these important interests and the Act itself. The entire discussion on this point consists of the following:

> Tenn. Code Ann. § 2-13-208 preserves the integrity of the State's municipal elections by reducing partisanship at the local level and reducing political-related disorder in municipal elections. Furthermore, under state law, municipalities bear the cost of conducting municipal elections. Elections are expensive, and should primaries be the norm, municipalities would not only bear the cost of the municipal general election, but also the primary municipal election and potential runoff elections for both.

(Doc. No. 15 at 11) (citations and footnote omitted).

Nonetheless, Defendants' explanation, brief though it may be, is sufficient. For one thing, "under rational basis review, ... a purported rational basis may be based on 'rational speculation unsupported by evidence or empirical data' and need not have a foundation in the record." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d, 758770 (6th Cir. 2005); *see also League of Indep. Fitness Facilities v. Whitmer*, 814 F. App'x 125, 128 (6th Cir. 2020) ("Under this test, the Governor's action 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.' " (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). Rational speculation, and indeed common sense, allows the Court to infer that a statute regulating municipal elections likely is rationally related to a State's "well-established and legitimate interest in administering its own elections." (*Id.* at 11 (quoting *Kishore*, 972 F.3d at 751)). Likewise, the Court can quite easily intuit the likelihood that forgoing the (cost of) primaries is related to the state's legitimate interest in preserving the public fisc and that a statute

requiring municipal elections to be nonpartisan is rationally related to the state's legitimate interest in reducing partisanship at the local level. Thus, the Court is more than satisfied the Act would likely pass the rational-basis test in a full review on the merits (rather than a consideration of the Plaintiff's *likelihood* of success on the merits, as the Court is engaging in here).

In summary, the Act's regulations impose a light burden upon an individual's rights, appear to be justified by valid state interests, and are thus likely to be found constitutional.

The Court has evaluated the first factor of a preliminary injunction at length and come to the conclusion that Plaintiff lacks a substantial likelihood of success on the merits because (1) it is not clear she has alleged an injury-in-fact to establish standing, and (2) even if she has established standing, the Act's regulations are likely constitutional. For that reason, the Court will address the remaining factors in shorter form.

## B. <u>Irreparable harm to Plaintiff</u>

As noted above, much of the injury alleged by Plaintiff is actually not harm to her but harm to the Coffee County Republican Party.[12] In fact, even in her Motion for Preliminary Injunction, Plaintiff's statement of irreparable harm is as follows:

> An injunction is necessary to prevent irreparable injury. The primaries for county elections will be held in April 2022. The parties must request in writing to the election commission by the end of November 2021 in order to hold a primary. If the parties miss this deadline due to the lack of injunction, there will be no opportunity for a primary to be held for municipal elections until 2024.

(Doc. No. 12-1 at 5). Additionally, in a similar case in the Eastern District of Ohio, an independent candidate for judicial office sought a preliminary injunction blocking the prohibition of identifying

---

[12] In *S.F. Cnty. Democratic Cent. Comm. v. Eu*, a case that Plaintiff relies heavily on to support her argument for preliminary injunction, the political parties were: (1) the actual party challenging the California Election Code, and (2) prohibited from endorsing, supporting, or opposing candidates for both partisan and nonpartisan elections, as well as not allowed to control their own size or membership. 826 F.2d 814 (1987). The case has little relevance to the present action.

a candidate's political party on the judicial ballot. The court there said, "to establish irreparable injury, the Plaintiff must establish that his election [] is made less likely due to the existence of the [challenged practice]." *Haffey v. Taft*, 803 F. Supp. 121, 125 (E.D. Ohio 1992). As noted by Plaintiff herself, she was previously elected Alderman with the Act firmly in place, so it is not clear how her election would be made less likely now, or how the injury is suddenly irreparable. This factor favors not granting the preliminary injunction.

The Court realizes that a finding of irreparable harm can be based solely on a finding of a violation of the plaintiff's First Amendment rights. But where (as here, as discussed above) a finding of a violation of the plaintiff's First Amendment rights is not likely, a finding of irreparable harm on this basis likewise is not likely. *See Prop. Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*, No. 3:21-CV-00359, 2021 WL 1946646, at *6–7 (M.D. Tenn. May 14, 2021).

## C. <u>Harm to the Defendants and public interest</u>

When the Government is the opposing party, the second two-factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("Once an applicant satisfies the first two factors, the traditional [preliminary injunction] inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party."); *Daunt*, 956 F.3d at 422 ([T]he public-interest factor "merge[s]" with the substantial-harm factor when the government is the defendant."). Plaintiff argues "[a]n injunction would not harm the defendants [because] [t]here are no money damages sought nor has this issue ever been litigated." (Doc. No. 12-1 at 5). This argument is not only questionably brief (consisting of only two short sentences), but entirely unpersuasive. It is well-accepted that "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (quoting *New Motor Vehicle*

*Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). Moreover, as noted above in the analysis under *Anderson-Burdick*, states have a clear interest in "protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) (citing *Bullock v. Carter*, 405 U.S. 134, 145 (1972). For those reasons, the Defendants (and the public) would suffer some form of harm if Defendants were enjoined from enforcing the Act. These final two factors also weigh against granting the preliminary injunction.

## CONCLUSION

For the reasons discussed herein, Plaintiff's Motion for Preliminary Injunction (Doc. No. 12) is **DENIED**. In making this determination, the Court does not suggest that Plaintiffs *necessarily* (as opposed to likely) will be unable to prevail at trial or that any decision here constitutes any law of the case. *See Cold Heading Co. v. B&D Thread Rolling, Inc.*, No. 2:11-CV-15189, 2012 WL 13008688, at *13 (E.D. Mich. June 5, 2012), *adopted by*, No. 11-15189, 2012 WL 13012405 (E.D. Mich. July 19, 2012); *Bronson v. Bd. of Educ. of the City Sch. Dist. of Cincinnati*, 550 F. Supp. 941, 945 (S.D. Ohio 1982) ("[B]ecause the nature of findings made in connection with a preliminary injunction are inherently tentative, it is apparent, under established authority, that findings made on motions for preliminary injunctions do not estop the parties at the trial on the merits, and are neither determinative of the issues in the case, nor binding upon the parties or the Court at a subsequent trial.").

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE