IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JENNA R. AMACHER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF TENNESSEE, et al., ) <br> ) <br> Defendants. ) <br> ) <br> ) | NO. 3:21-cv-00638 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 14, "Motion"), supported by an accompanying Memorandum of Law (Doc. No. 15). Plaintiff filed a response (Doc. No. 17, "Response"), and Defendants did not file a reply. For the reasons stated herein, Defendant's Motion will be **GRANTED** in part and **DENIED** in part**.**

## BACKGROUND

Plaintiff, Jenna Amacher, is an Alderman for the City of Tullahoma in Coffee County, Tennessee. (Doc. No. 1 at 1). She is affiliated with the Coffee County Republican Party. (*Id.* at 2). She brings this action challenging the enforcement of Tenn. Code. Ann. § 2-13-208 ("the Act"). The Act requires that municipal elections in Tennessee be non-partisan unless otherwise expressly allowed by the municipal charter. Tenn. Code Ann. § 2-13-208(a).[1] Plaintiff wishes to engage in a

---

[1] The Court discussed the relevant statutes in more depth in its previous opinion denying Plaintiff's request for a preliminary injunction. *See Amacher v. State of Tennessee, et al.,* No. 3:21-CV-00638, 2021 WL 5015803, at *1 (M.D. Tenn. Oct. 28, 2021).

partisan primary, as well as have her party affiliation included on the ballot in the upcoming election where she intends to seek re-election as a Tullahoma Alderman. (Doc. No. 1 at 2).

Plaintiff filed this present action on August 17, 2021, seeking a permanent injunction restraining Defendants—the State of Tennessee, Tennessee Secretary of State Tre Hargett, and the Tennessee Election Commission—from enforcing the Act, a judgment declaring the Act to be unconstitutional under the First Amendment, and a judgment awarding Plaintiff attorney's fees. On September 9, 2021, Plaintiff filed a Motion for Preliminary Injunction, seeking to preliminary enjoin Defendants from enforcing the Act. (Doc. No. 12 at 1). The Court rejected the request for a preliminary injunction, based in large part on the unlikelihood of Plaintiff ultimately establishing Article III standing as required to successfully prosecute this case. *See Amacher v. State of Tennessee, et al.,* No. 3:21-CV-00638, 2021 WL 5015803, at *10 (M.D. Tenn. Oct. 28, 2021).

Defendants' Motion first argues that the case should be dismissed under Fed. R. Civ. P. 12(b)(1) because (according to Defendants) the Court lacks subject-matter jurisdiction because (again according to Defendants) they enjoy "sovereign immunity," which Defendants use synonymously with Eleventh Amendment immunity. (Doc. No. 15 at 3). The Motion additionally argues for dismissal under Fed. R. Civ. P. 12(b)(6) for two reasons: (1) Plaintiff lacks Article III standing, and (2) Plaintiff has failed to state a claim that the statute in question violates her rights under the First or Fourteenth Amendment. (*Id.* at 6-9).

## STANDARD

The Court first notes that an argument related to a lack of Article III standing is properly brought via a Fed. R. Civ. P. 12(b)(1) motion for lack of subject-matter jurisdiction, rather than via 12(b)(6). *See Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d. 555, 562 (M.D. Tenn. 2020) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). Defendants are not the

first to incorrectly invoke Rule 12(b)(6) when challenging Article III standing, however. And in any event, the Court must consider any colorable challenge to subject-matter jurisdiction—which is what a challenge to standing is, as discussed below—when it is called to the Court's attention. *Beauchamp v. Sampson*, No. 10-12901, 2011 WL 4498804, at *1 (E.D. Mich. Sept. 27, 2011) (noting that although a particular so-called "objection" of the defendants was procedurally improper, "the Court is nevertheless obligated to address [the defendants'] 'objection' because it challenges the Court's subject matter jurisdiction."). The fact that Defendants have cited the wrong paragraph of Rule 12(b) does not change that fact or allow the Court to ignore the challenge to standing. Indeed, even absent a defendant's challenge to subject-matter jurisdiction, district courts are obligated to consider *sua sponte* whether they have subject-matter jurisdiction. *Spencer v. Stork*, 513 F. App'x 557, 558 (6th Cir. 2013) (citing *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999)).

The Court additionally notes that there is a difference between the immunity conferred by the Eleventh Amendment and common-law sovereign immunity. *See WCI, Inc. v. Ohio Dep't of Public Safety*, 18 F. 4th 509, 513 (6th Cir. 2021) ("The parties and the district court conflate the common-law doctrine of sovereign immunity with the immunity conferred by the Eleventh Amendment. And they are not the first: courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable concepts. But as a matter of original meaning, the two are conceptually distinct."). In this sense, "sovereign immunity" is not a synonym for Eleventh Amendment immunity as Defendants suggest. As the Sixth Circuit recently explained,

> The Eleventh Amendment removes from federal jurisdiction "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend. XI. The plain text of the amendment includes a diversity requirement and sounds in subject-matter jurisdiction. William Baude & Stephen E. Sachs, *The Misunderstood Eleventh Amendment*, 169 U. PA. L. REV. 609, 612 (2021) . . . State sovereign immunity, on the other hand, refers to a state's

> right "not to be amenable to the suit of an individual without its consent." The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted). Sovereign immunity "neither derives from, nor is limited by, the terms of the Eleventh Amendment," *Franchise Tax Bd. v. Hyatt*, ⸺ U.S. ⸺ –, 139 S. Ct. 1485, 1496, 203 L.Ed.2d 768 (2019) (quoting *Alden*, 527 U.S. at 713, 119 S. Ct. 2240), and its origins predate the Constitution, *id.* at 1493 (citing *McIlvaine v. Coxe's Lessee*, 8 U.S. (4 Cranch) 209, 212, 2 L. Ed. 598 (1808)). It sounds in personal jurisdiction and may be waived by a state's conduct. Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 HARV. L. REV. 1559, 1565–66 (2002). And unlike the Eleventh Amendment, it erects a jurisdictional bar in both state and federal courts and does not require diversity among the litigants.

*Id.* at 513-14. Here, though Defendants (like many before them) have conflated the two immunities,[2] they are distinct, and it is easy to see that one of them is inapplicable here. Specifically, the Eleventh Amendment cannot be applicable here, because there is no diversity of citizenship between Plaintiff and Defendants. Accordingly, Defendants' immunity argument is rooted in state sovereign immunity (not the Eleventh Amendment), which as noted above, "sounds in personal jurisdiction." *Id.* at 514.

Additionally, it is important here to note that federal courts must decide jurisdictional issues before considering merits issues. *See In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016). A challenge to a plaintiff's standing under Article III of the Constitution is a challenge to subject-matter jurisdiction; Article III "[s]tanding is a jurisdictional requirement," and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tennessee General Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). But Plaintiff also faces a challenge to personal jurisdiction, because (as noted above) Defendants have raised the defense of

---

[2] Part of the reason the Court says Defendants have conflated the two immunities is the fact that Defendants refer by name to both of them, albeit under the mistaken impression that the two immunities are one and the same. By referring to sovereign immunity by name, and not just to Eleventh Amendment immunity, Defendants fairly have raised the defense of sovereign (as opposed to Eleventh Amendment) immunity in particular, and so the Court proceeds with considering that defense.

sovereign immunity, a defense that is in the nature of a challenge to personal jurisdiction. Presented with pending challenges to both its subject-matter jurisdiction and its personal jurisdiction, the Court may resolve them in either order, but challenges to a court's subject-matter jurisdiction that "involve no arduous inquiry" should be dealt with first to maintain efficiency in the federal court system. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). Because the Court has determined that Defendants' challenge to subject-matter jurisdiction (based on a purported lack of Article III standing) does not involve a difficult inquiry, the Court will first address this challenge.

As discussed, Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction" *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014), which is "always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). Motions to dismiss for lack of subject-matter jurisdiction come in two forms: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading, while a factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.* If there is a factual attack on the subject-matter jurisdiction of the court, no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.*

Like any kind of challenge to subject-matter jurisdiction, a challenge specifically to the plaintiff's standing can be in the form of either a facial attack or a factual attack. *See Kale v. Procollect, Inc.*, No. 2:20-CV-2776-SHM-TMP, 2021 WL 2784556, at *2 (W.D. Tenn. July 2, 2021) ("Challenges to standing can be facial or factual."); *In re Saffold*, 373 B.R. 39, 43 (Bankr.

N.D. Ohio 2007) ("A challenge to standing may be either a facial attack on a pleading or a factual attack.").

"A facial attack on standing challenges the legal sufficiency of the complaint, whereas a factual challenge against standing questions whether the complaint's factual assertions reflect reality." *Shumway v. Neil Hosp., Inc.*, No. 121CV01059STAJAY, 2021 WL 5181754, at *1 (W.D. Tenn. Nov. 8, 2021) (citing *Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A review of Defendants' standing arguments (Doc. No. 15 at 6-8), although improperly presented under Rule 12(b)(6), reveals that they are bringing a facial rather than a factual challenge.

## DISCUSSION

Defendants argue that Plaintiff's Complaint fails to allege an "injury-in-fact" to Plaintiff herself. (Doc. No. 15 at 7). Instead, Defendants say, Plaintiff has mainly alleged injuries suffered by the Coffee County Republican Party. (*Id.*). Plaintiff's Response is difficult to follow[3] and in places shows a deep misunderstanding of the law. But from what the Court can glean, Plaintiff argues that she is asserting violations of her "*individual* constitutional rights, not that of her designated political party" and that the Supreme Court case, *Kusper v. Pontikes*, 414 U.S. 51 (1973), provides her standing because it pronounces that freedom of association "means that an individual voter has the right to associate with a political party of her choice." (Doc. No. 17 at 1, 9 (emphasis in original)).

To satisfy Article III's standing requirements, a plaintiff must show: (1) he or she has suffered an "injury-in-fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

---

[3] It appears to the Court that in some places throughout the Response, Plaintiff copied and pasted arguments from her motion for preliminary injunction (Doc. No. 12) without regard to organization or relevance.

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Doe v. Byrd*, No. 1:18-cv-00084, 2020 WL 1285428, at *2 (M.D. Tenn. Mar. 18, 2020). The Supreme Court has emphasized that the condition that an injury-in-fact be "concrete and particularized" encompasses two distinct requirements. *Spokeo, Inc.v. Robins*, 578 U.S. 330, 340 (2016) ("We have made it clear time and time again that an injury in fact must be both concrete and particularized."). To be "concrete," an injury must be "de facto"—meaning it actually exists—and to be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Id.*

At the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing. *Id.* at 338 (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Moreover, as this Court has previously noted, a plaintiff asserting injunctive or declaratory relief—like Plaintiff here— "face[s] a higher burden; they must show actual or present harm or a significant possibility of future harm." *Memphis A. Phillip Randolph Inst. v. Hargett*, 485 F. Supp. 3d 959, 977 (M.D. Tenn. 2020) (citing *Shelby Cty. Advocates for Valid Elections v. Hargett*, No. 2:18-cv-02706-TLP-dkv, 2019 WL 4394754, at *5 (W.D. Tenn. Sept. 13, 2019)) *vacated and remanded sub nom.*, 2 F.4th 548 (6th Cir. 2021).

Plaintiff's Complaint (and her attached Affidavit) include the following statements that appear to the Court to be alleging an injury to herself, individually:

- "[Plaintiff] seeks the right to affiliate with her political organization on the voter ballot." (Doc. No. 1 at 2).
- "Plaintiff asserts the statutory effect of delegating the right of political association to the individual municipalities is also unconstitutional. Under the application of 42 U.S.C. 1983, the unconstitutional statute violates the Plaintiff's equal protection of the law." (*Id.*).
- "[Plaintiff's] constitutional rights to freedom of associations and free speech are precluded by T.C.A. 2-13-208 which denied [her] the opportunity to run as a recognized Republican." (Doc. No. 1-1 at 3).

Thus, it appears Plaintiff's stated injury is her inability to be designated as a Republican on the voter ballot. As the Court noted in its opinion on Plaintiff's preliminary injunction request, a denial of party affiliation on a ballot would not be a violation of Plaintiff's right to free speech, as she is neither writing nor publishing said ballot. *Amacher,* No. 3:21-CV-00638, at *5. Moreover, there is no constitutional right to have one's party affiliation denoted on a ballot. S*ee Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression."); *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992) (finding that states do not have to provide ballots with political designations of candidates); *Ohio Council 8 American Federation of State v. Brunner*, 24 F. Supp. 3d 680, 691 (S.D. Ohio 2014) ("To summarize, Ohio's general election ballot is not a forum for judicial candidates' speech."); *Haffey v. Taft*, 803 F. Supp. 121, 125 (S.D. Ohio 1992) (noting that a ballot is not a "vehicle for communicating messages" so a candidate does not suffer an injury if denied the right to have their party identified on the ballot). Thus, the identified statements above have not adequately alleged an injury-in-fact (present or future) to *Plaintiff herself* as required for Plaintiff to have Article III standing.

Plaintiff's Complaint also contains statements that appear to be alleging additional injuries sustained by *her political party*, including:

- "The prohibition directly hampers the ability of a party to spread its message and hamstrings voters seeking to inform themselves" (Doc. No. 1 at 4).
- "Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech, but also infringes upon their freedom of association." (*Id.* at 5).
- "Depriving a political party of the powder to endorse [candidates] suffocates [freedom of association]." (*Id.* at 6).

These allegations do not identify injuries (actual or future) directly to Plaintiff, but rather identify injuries allegedly suffered by the Coffee County Republican Party. Plaintiff's Response states she

"has standing to assert her associational rights," thus suggesting that she has standing to bring claims on behalf of the Coffee County Republican Party. (Doc. No. 17 at 9).

Initially, the Court notes that "associational standing" is different from "third-party standing." *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 539, 547 (6th Cir. 2021) (drawing distinctions between the two concepts). Associational standing confers standing on an *association* to sue for injuries as to which its individual members have standing. *See, e.g.*, *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union*, 467 F.3d 999, 1010 (6th Cir. 2006). It does not confer standing on *individual members* of an association to sue for injuries to the association, so it cannot and does not apply to confer standing on Plaintiff.

In theory, Plaintiff could have third-party standing, which "permits a plaintiff to assert the constitutional or statutory rights of parties not before the court if the plaintiff has a close relationship to those parties and if they are hindered in protecting their own rights." *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 547. But to do this, Plaintiff must show "(1) [she] has suffered an injury in fact; (2) [she] has a close relationship to the third party; and (3) there is some hindrance to the third party's ability to protect his or her own interests." *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 404 (6th Cir. 1999)).

Here, as the Court noted above, Plaintiff has not alleged injury to herself, nor has she alleged any facts plausibly suggesting that the Coffee County Republican Party is unable to protect its own interests. Consequently, Plaintiff does not have third-party standing. Another way to look at it is to note that third-party standing essentially allows a plaintiff who has *her own standing* to also have standing to sue on behalf of third parties. Individual plaintiffs have third-party standing to raise claims on behalf of others if, *in addition to the individuals' own standing*, they can show a

close relationship with the third parties whose rights they assert and some hindrance to the third parties pursuing their own rights. *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 361 (D.D.C. 2020), *appeal dismissed*, 2021 WL 2201669 (D.C. Cir. 2021). But here, as noted, Plaintiff lacks her own standing due to the lack of an injury-in-fact to herself, so she lacks third-party standing to sue on behalf of the Coffee County Republican Party.

To summarize, Plaintiff's Complaint fails to allege a "concrete and particularized injury" to herself, which prevents Plaintiff from establishing Article III standing. *Spokeo, Inc.*, 578 U.S. at 340. Without Article III standing established, the Court does not have subject-matter jurisdiction over Plaintiff's claims. *See Exec. Transp. Sys. LLC v. Louisville Reg'l Airport Auth.*, 678 F. Supp. 2d 498, 505 (W.D. Ky. 2010) ("Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no 'Case' or 'Controversy' upon which the federal judicial power can act."). Accordingly, the case will be dismissed.

As the Court has determined it lacks subject-matter jurisdiction over the case, it will not consider any of the other arguments for dismissal outlined in the Motion. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

## CONCLUSION

For the reasons indicated herein, Defendants' Motion will be **GRANTED** in part and **DENIED** in part. The Motion will be granted as to the argument that Plaintiff lacks standing, and Plaintiff's claims will be **DISMISSED without prejudice** for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). The Motion will be denied as moot with respect to all other arguments.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE